1  MARK D. BRUTZKUS - Bar No. 128102
   TODD M. LANDER - Bar No. 173031
2  DAVID A. TASHROUDIAN - Bar No. 266718
   EZRA BRUTZKUS GUBNER LLP
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone: 818.827.9000
   Facsimile: 818.827.9099
5  Email:    mbrutzkus@ebg-law.com
             tlander@ebg-law.com
6            dtasrhoudian@ebg-law.com

7  Attorneys for Defendants
   SKIVA INTERNATIONAL, INC., ROSS STORES, INC., RAINBOW USA,
8  INC., CITI TRENDS, INC., NATIONAL STORES, INC., and THE TJX
   COMPANIES, INC.
9
                  UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11

12 | L.A. PRINTEX INDUSTRIES, INC., a | Case No. CV09-5728 AHM (RCx)
   | California Corporation,
13 |                                  | **DEFENDANTS' MEMORANDUM OF
   |        Plaintiff,                | CONTENTIONS OF FACT AND
14 |                                  | LAW [L.R. 16-4]**
   | vs.
15 |                                  | Action Filed: August 5, 2009
   | SKIVA INTERNATIONAL, INC., a     | Judge Assigned: Hon A. Howard Matz
16 | New York Corporation; ROSS
   | STORES, INC., a Delaware         | Date: September 20, 2010
17 | Corporation; RAINBOW USA, INC., a| Time: 11:00 a.m.
   | New York Corporation; MELROSE, an| Place: Crtrm 14
18 | Entity of Form Unknown;
   | CITITRENDS, INC., a Georgia
19 | Corporation; FACTORY 2-U
   | STORES, INC., a California
20 | Corporation; FALLAS PARADES, an
   | Entity of Form Unknown;
21 | KIDSTOWN, INC., a Vermont
   | Corporation; FASHION TREND, INC.,
22 | a California Corporation; THE TJX
   | COMPANIES, INC., d/b/a AJ
23 | WRIGHT, a Massachusetts
   | Corporation; VNIEL APPAREL, INC.
24 | d/b/a ROSEGERANIUM, a California
   | Corporation; and DOES 1 through 10,
25
   |        Defendants.
26

27

28 //

---

-1-
Defendants' Memorandum Of Contentions Of Fact And Law [L.R. 16-4]

Defendants SKIVA INTERNATIONAL, INC., ROSS STORES, INC., RAINBOW USA, INC., CITI TRENDS, INC., NATIONAL STORES, INC. and THE TJX COMPANIES, INC. (collectively "Defendants") hereby submit their Memorandum of Contentions of Fact and Law, in accordance with Local Rule 16-

## I. CLAIMS AND DEFENSES

### A. The Copyright Registrations Of Plaintiff L.A. Printex, Inc. ("L.A. Printex") Are Invalid As A Matter Of Law.

The *Copyright Act* permits single work registrations where component works are registered under a single registration certificate. The registration certificates for Subject Design A, Subject Design B, Subject Design D, and Subject Design E (as these terms are defined in the Complaint) purport to register these designs under distinct single work registration certificates. But the law requires that component works identified on these certificates must have been published in a "single unit of publication," meaning that each constituent design included in the registration must be published in a *single unit and share the same copyright claimant*. Here, the component works that were registered along with each of the subject designs mentioned above were published on a different date. As such, L.A. Printex has run afoul of the single unit of publication rule, and the registration certificates for Subject Design A, Subject Design B, Subject Design D, and Subject Design E are invalid. Therefore, LA Printex cannot maintain an action for copyright infringement in reliance of these registrations.

A certificate of copyright registration generally triggers a presumption of validity concerning the registration itself and of the facts contained within it. But that presumption is subject to a limitation that is directly relevant in this case: it may be rebutted, in the case of multiple work registrations such as those at issue here, upon evidence showing that the various designs were not published in a single unit of publication, *per Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 205 (3rd Cir. 2005);

In our case, both principles operate to defeat any presumptions in favor of these registrations. And that, by consequence, shifts the evidentiary burden here to L.A. Printex, a burden it cannot discharge.

### 1. The Single Unit Of Publication Rule.

The *Copyright Act* permits only two forms of registrations: group and single work registrations. But Federal regulations impose strict definitional parameters on group registrations, limiting their scope to registrations covering "automated databases," "related serials," "daily newspapers," "contribution to periodicals," "daily newsletters," and "published photographs." See 37 C.F.R. §§ 202.3(b)(4)-(9). This plainly does not cover the LA Printex registrations, all of which relate exclusively to textile designs.

The law does permit a claimant to register multiple works under the "single" work moniker, though the *Copyright Act* properly considers that a collective work registration. See 17 U.S.C. § 201(c). But any such registration is only effective where each of the works is published in a single unit of publication and share the same copyright claimant. See 37 C.F.R. § 202.3(b)(3)(i)(A); see also *Kay Berry*, 421 F.3d at 205 (quoting 37 C.F.R. § 202.3(b)(3)(i)(A)) ("The single work registration is silent on whether the individual, self contained elements of the 'single work' be 'related' in order to be registered. Instead, single work registration requires…that all of the self contained works be 'included in a single unit of publication' and share the same copyright claimant.") As the Second Circuit explained in *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 69 (2d Cir. 2001), where the separate and individual designs are published separately and are not part of a true "collection," they are statutorily required to be registered separately.

The application of these well settled regulations demonstrates L.A. Printex cannot prevail as a matter of law concerning the Subject Designs A, B, D and E.

### 2. L.A. Printex Has Not Satisfied The "Single Unit Of Publication" Rule.

An essential element of a single work registration is that the all component works must be "included in a single unit of publication." And the *Copyright Act* defines "publication" as the "distribution of copies * * * of a work to the public by *sale or other transfer of ownership, or by rental, lease, or lending.* The offering to distribute copies * * * to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101.[1] The distribution of "catalogs and collections of photographs to multiple parties have been found * * * to constitute a single unit of publication." *See R.F.M.A.S, Inc. v. Mimi So*, 619 F.Supp.2d 39, 60 (S.D.N.Y. 2009). In short, the single unit of publication rule requires that each individual work registered under a global registration be published contemporaneously.

L.A. Printex has not produced any evidence in this proceeding demonstrating that any of the Subject Designs were in fact included in a single unit of publication. To the contrary, the existing evidence shows, in no uncertain terms, that each of the Subject Designs was published separately from the balance of the works included in the respective registrations. The registrations are invalid as a consequence.

### B. No Presumption Of Validity Attached To Subject Design C Because The Design Was Not Published Within Five Years Of Its Creation.

The *Copyright Act* provides that a plaintiff alleging copyright infringement who obtained a certificate of copyright registration within five years of the first publication of a work has the benefit of a presumption of the validity of the copyright. *See* 17 U.S.C § 410(c). Subject Design C, as that term is defined in the

---

[1] "Copies" is defined to mean "material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or other communicated." *Id.*

1  Complaint, was not issued within five years of the publication of the design and
2  therefore no presumption of validity ever attached to the registration.  If Plaintiff
3  intends to rely on the presumption, it must show that the registration purporting to
4  register Subject Design C with the Copyright Office was in fact issued within five
5  years of publication of the design, something it has not done and cannot do.
6  Lacking the shelter of the presumption, the Plaintiff bears the burden of
7  establishing, by way of affirmative evidence, that it was the original author of the
8  design.
9       Here, L.A. Printex's registration certificate concerning Subject Design C –
10 Registration number VA 1-642-285 – maintains an effective date of October 13,
11 2008, just eight days shy of five years from the alleged first publication date of
12 October 21, 2003.  But that publication date is, by LA Printex' own admission,
13 nothing more than a general estimate and thus cannot be relied upon as a reliable
14 date for purposes of the five-year rule.  The deposition testimony of Jae Nah
15 ("Nah"), L.A. Printex's owner and president, confirms the date is merely
16 guesswork.
17      Nah specifically testified, for example, that his company retains no written
18 records of the initial publication dates of its designs because those dates are
19 considered "unimportant" and unworthy of the resources necessary to track them.
20 It gets worse.  Nah went on to explain that the only way he typically determines
21 publication dates is by asking LA Printex's head salesman to estimate the date
22 from memory, or referring to his own memory.  And when pressed concerning
23 registrations involving publication dates that substantially preceded the effective
24 date of registration, Nah responded that LA Printex's practice is to approximate
25 the date within a several month timeframe.
26      In light of Nah's testimony, the October 21, 2003 date cannot be considered
27 the actual – or even closely approximate – publication date for Subject Design C.
28 Indeed, it's quite possible, according to Nah, that this design might first have been

published several months before that identified date.  Consequently, we respectfully submit that the registration certificate covering this design is not entitled to any presumption of validity under 17 U.S.C. § 410(c) – or the presumption is rebutted – because it cannot be determined, as a matter of fact, that the certificate was issued within five years of the date of first publication.  Minimally, any presumption should be given little evidentiary weight by this Court.  See 17 U.S.C. § 410(c) ("[t]he evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.").

As a further consequence, the burden of proof lies now with L.A. Printex to demonstrate, by way of affirmative evidence, that it satisfies all the elements of infringement claim.  It cannot do so, as explained in more detail below.

### C. Subject Design C Is Not An Original Work Of Authorship.

The essential components of a copyright infringement claim are simple: (1) ownership of a valid copyright; and (2) copying of constituent elements of that work that are *original*."  See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (emphasis added).  Originality is required by the Constitution: "[t]he source of Congress' power to enact copyright laws is Article I, § 8, cl. 8, of the Constitution, which authorizes Congress to 'secur[e] for limited Times to Authors * * * the exclusive Right to their respective Writings.'" *Feist Publ'ns, Inc.*, 499 U.S. at 346.  LA Printex cannot satisfy this standard because Subject Design C is not its original creation – and it never advised the Copyright Office of the same.  The evidence will show that LA Printex copied Subject Design C from numerous pre-existing works dating, in some cases, to the late 19th century.  These pre-existing works are publicly available, meaning LA Printex had access to them as a matter of law. Defendants identified thirty-three works that bear a striking resemblance to Subject Design C.  Many of the works are in fact nearly, if not absolutely identical to the Subject Design C.  It is apparent from this evidence that

1  LA Printex was not the original author of the work.

2      **D.    L.A. Printex Committed Fraud On The Copyright Office.**

3      A registrant commits fraud on the Copyright Office where it knowingly fails to advise the office of facts that might lead to the rejection of the application. *See e.g., Urantia Foundation v. Maaherra,* 114 F.3d 955, 963 (9th Cir. 1997) (knowing misstatements on a registration application that may have led to the rejection of the application constitute fraud). Defendants believe that the evidence will show that L.A. Printex committed fraud on the Copyright Office.

    No component work of a single work registration may be a derivative work because, by their nature, derivative works are not published as a single unit of publication - each portion of the derivative work is published at a different moment. However, Subject Design E, as that term is defined in the Complaint, with single work registration number VA 1-359-233, was initially identified as a derivative work. L.A. Printex, realizing that derivative works cannot be registered as a single work, then had the application amended to remove any reference to the design being a derivative work. By doing so, it was able to have Subject Design E registered pursuant to registration certificate VA 1-359-233 along with the other component works that make up the single work registration. This is clearly fraud on the Copyright office. The removal of the designation of Subject Design E as a derivative work for the sole reason that it be registered as a single work under VA 1-359-233 is improper and renders the entire registration void.

    **E.    L.A. Printex Cannot Establish Liability Under The Prevailing Standard Governing Thin Copyrights.**

    A copyright plaintiff must typically establish that it owns the copyrighted work in dispute and that the defendant's work is substantially similar to the original elements of the plaintiff's creation. The Ninth Circuit applies a two-part test in facilitating that determination: the extrinsic and intrinsic tests. *See Express, LLC v. Fetish Group, Inc.*, 424 F.Supp.2d 1211, 1228 (C.D. Cal, 2006) (extrinsic

test assesses whether two works "share a similarity of ideas and expression based on objective, external criteria"); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (intrinsic test inquires if "an ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." But before either prong of the test can be considered, it must first be determined if, and to what extent, the plaintiff's work is entitled to protection under the copyright laws. This brings us to the "thin" copyright regime.

The concept of a "thin copyright" is rooted in the foundational limitation on the scope of the copyright laws. That is, the law only protects genuinely original creative content. More specifically, where a work is drawn from matters within the public domain – such as facts, concepts or, as is the case here, representations of images such as flowers that cannot be protected in and of themselves – the rights attendant to that work are more limited than those arising from original works of authorship. This is because the reproduction of those ideas, facts or concepts in the public domain cannot be protected, but instead only the manner in which the author combines or complies them are subject to copyright. The Court in *Express, LLC* explained the distinction:

> "'Originality, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.' [Citations.] '[T]he requisite level of creativity is extremely low, [citations] but 'it is not negligible.' [Citations.] 'There must be something more than a 'merely trivial' variations, something recognizably the artist's own.'
> \* \* \*
> The requisite originality for copyright protection can also be found in the combination of unoriginal (and therefore uncopyrightable) elements. Mere facts are not copyrightable, but the creative organization – choosing which facts to include and how to arrange them – of those facts may be. [Citations.] For example, a phone book organized alphabetically does not meet the originality requirement because this presentation of facts (the names and phone numbers) is

'practically inevitable.' [Citations.] On the other hand, the selection and organization of supposedly divinely delivered revelations (which were therefore not original to those claiming the copyright protection) was held to have enough originality to merit copyright protection. [Citations.] Walking the line between combinations of unprotectable elements that can and cannot be afforded protection is a difficult task. In its most succinct statement of the law in this area, the Ninth Circuit stated that a 'combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Express, LLC, supra*, 424 F.Supp.2d at 1225. [2]

The concept was further explained the concept in *Lucky Break Wishbone Corp. v. Sears, Roebuck and Co.*, 528 F.Supp.2d 1106, 1123-1124 (W.D. Wash. 2007), where the owner of a copyright covering the depiction of a turkey wishbone sued for alleged infringement of the work:

> "Realistic depictions of live animals can be protected by copyright. [Citations.] However, the 'scope of copyright protection in such works is narrow.' [Citations.] To the extent the artistic choices are not governed by the animal's physiology or by the medium of art, they are original elements that receive 'thin copyright' protection.' Put another way, a thin copyright 'compris[es] nothing more than [the artist's] original contribution to ideas already in the public domain.' In [*Santava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003)], the Ninth Circuit held that the artist 'may not prevent others from copying aspects of his sculptures resulting from either jelly-fish physiology [the case involved alleged infringement of a glass sculpture of jellyfish] or from their depiction in the glass-in-glass medium.' [Citations.]"

The Court then noted that, when addressing a thin copyright, "[v]irtually identical," not "substantially similar," is the standard for determining whether a thin copyright has been copied, and thus infringed. *Id.*; *see also Ets-Hokin v. Sky Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) ("When we apply the limiting doctrine, subtracting the unoriginal elements, *Ets-Hokins* is left with only a 'thin'

---

[2] The *Express* Court found that a registered fabric design was a protected thin copyright.

copyright, which protects against only virtually identical copying').

Defendants will demonstrate that: (1) L.A. Printex's subject designs in this matter are drawn entirely from the public domain and thus qualifies only for "thin" protection; and (2) the patterns sold and disseminated by Defendants are not virtually identical to those designs. This will include testimony establishing that the elements of the subject designs are elements firmly within the public domain. And while the compilation of those elements may be protectable under the law, the resulting work is no more than a thin copyright. From there, Defendants will elicit evidence and otherwise demonstrate the Defendants' complained of designs are not "virtually identical" to L.A. Printex's work, and thus do not infringe on L.A. Printex's intellectual property rights.

F.  **Any Infringement, If There Was Such, Was Innocent.**

In addition, none of the Defendants can be found to have willfully infringed any of L.A. Printex's designs. None of the Defendant had knowledge of L.A. Printex's registered works when they manufactured, sold, or distributed the allegedly infringing garments. The Defendants will present evidence confirming that fact, and that L.A. Printex's cease and desist letter constituted their first notice of any potential problems arising out of the sale of the infringing garments. At most, Defendants are innocent infringers.

G.  **L.A. Printex Is Not Entitled To Statutory Damages Or Attorneys Fees.**

For the reasons explained above, Defendants intend to assert and prove that L.A. Printex is entitled to no recovery in this matter. But even assuming *arguendo* somehow establishes liability, the company's available remedies are minimal.

To start, L.A. Printex is prohibited from claiming or receiving statutory damages or attorneys fees. The *Copyright Act*, 17 U.S.C.§ 101 *et seq.*, generally entitles a prevailing plaintiff in an action for infringement to opt to recover statutory damages under 17 U.S.C.§ 504 and attorney's fees under 17 U.S.C.

§ 505. These remedies, however, are available only if the copyrighted work has been registered before the date the action is filed, "or the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement. . ." 17 U.S.C. § 412.

Defendants intend to show the alleged acts of infringement occurred before the effective date of any viable copyright registration. Therefore, as a matter of law, L.A. Printex has no right to statutory damages or attorney's fees.

## II. BIFURCATION OF ISSUES

Defendants do not request the bifurcation of any issues.

## III. JURY TRIAL

Plaintiff L.A. Printex has request a jury trial.

## IV. ATTORNEY'S FEES

Plaintiff L.A. Printex will seek reimbursement of the costs and fees it has incurred.

## V. ABANDONMENT OF ISSUES

Defendants have not abandoned any defense.

Dated: September 14, 2010

EZRA BRUTZKUS GUBNER LLP

By: _____
MARK D. BRUTZKUS
TODD M. LANDER
DAVID A. TASHROUDIAN
Attorneys for Defendant, SKIVA INTERNATIONAL, INC., ROSS STORES, INC., RAINBOW USA, INC., CITI TRENDS, INC., NATIONAL STORES, INC., and THE TJX COMPANIES, INC.